## NATIONAL LABOR RELATIONS BOARD v. BURRY BISCUIT CORPORATION.

### No. 7642.

Circuit Court of Appeals, Seventh Circuit.

Nov. 26, 1941.

Robert B. Watts, of Washington, D. C., I. S. Dorfman, of Chicago, Ill., and William J. Avrutis, of Washington, D. C., for petitioner.

Don Kenneth Jones and Thos. Robert Mulroy, both of Chicago, Ill., for respondent.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks enforcement of its order entered June 27, 1940, directing respondent to cease and desist from interfering with the administration of the "Independent Union" of its employees or contributing support to this or any other similar labor organization and directing it to withdraw recognition from the Independent, abrogate its contract and disestablish relationship therewith, to post notices of such action and to desist from "in any other manner" interfering with, restraining, or coercing its employees in the exercise of their rights as guaranteed in Section 7 of the Act. U.S.C.A. Title 29, § 151 et seq.

The Board's complaint charged unfair labor practices within the meaning of Section 8, subdivision (2) of the act in that respondent had (1), instigated formation of, influenced and dominated an employees' union, the Independent; (2), discriminated against employees by discharging, because of other union membership, Ernest Matthews, and (3), in various respects, interfered with, restrained and coerced its employees in the exercise of their rights. The examiner found that the respondent had not by any activity other than (1), restrained or coerced its employees; that Matthews had been discharged solely because of his inefficiency and unsatisfactory service and not because he had aided a competitive union; that at no time had the competing union demanded recognition as sole bargaining agent; that it had never asked to hold meetings at respondent's plant and that respondent had expressed no hostility toward it. The Board entered its decision upon the examiner's report approving it in all respects.

Respondent contends that there is not sufficient evidence to support the findings, relying upon the premises that the sugges-

tion by an executive officer of respondent of the name of an attorney to its employees and the permission by respondent to its employees to meet and conduct their voting upon the company property upon their own time are insufficient to justify the conclusion that respondent was guilty of unfair labor practices. It becomes essential, therefore, to refer to some of the facts before the examiner.

In the spring of 1938, the competing union, known herein as Local 411, approached the employees, proposing to organize the plant. Two of the older employees did not look kindly upon this attempt and conceived the idea of forming an independent union. They discussed this with other older employees. As a result the two employees approached plant manager White. They told him of the efforts being made by Local 411 and of the feeling on the part of many employees that an independent union would be preferable and inquired if they might hold a meeting in the plant to determine how strong the sentiment for such a union was. White readily consented but provided that the meeting should be held "on the employees' own time." The two men then inquired as to whether White knew of an attorney who had experience in forming unions. White had known in grammar school days Maclay, who was not his or respondent's attorney, who had had some experience in labor union matters and who, the record discloses, had no connection whatsoever with respondent.

The employees retained Maclay and held a meeting at the plant on April 22 when the change of shifts occurred. The supervisors of the production lines during working hours informed the employees of the meeting and requested their attendance. Contrary to ordinary practice, at the time of change of shift, the supervisors shut down the producing lines and labor ceased during the time of the meeting, some thirty minutes. After an expression of the purpose of the meeting by the organizers and the attorney, the employees voted upon whether they were in favor of an independent union, writing yes or no upon blanks of paper. The result was eight to one for the affirmative.

Some three or four days later, one of the organizers placed a shipping case in the aisle of the packing department where the majority of the employees worked and each operator left his labor, one by one, to visit him. Each of those who were willing signed a pledge card for the independent union. This required about an hour and a half and took place in view of the foremen; there was no attempt at concealment. The organizers engaged in solicitation for the Independent on company time and property. Within ten days every man in the plant had signed. Elections of representatives were held at the plant during working hours and the committeemen met frequently in one of the plant offices. By-laws were adopted and a proposed contract formulated. Notices of meetings and of dues of members and a proposed contract were posted throughout the plant. Union dues were collected on the plant premises.

On May 20, the attorney wrote to respondent requesting recognition of the Independent as sole bargaining agent. The list of members was checked against the plant payroll, showing 100 per cent representation in the Independent. Thereupon respondent granted it recognition. After some negotiations back and forth and modification the proposed contract was signed by each of the parties, the company agreeing not to employ any new employee unless he agreed to apply for membership in the union at the end of six weeks of employment. Upon expiration a similar contract was executed.

The Board concluded that by suggestion of the name of an attorney, by permitting the meeting to be held on the plant premises, with full knowledge that the Independent was to be proposed, by arranging to have production on the shifts delayed and the plant shut down during the meeting and by the supervisors' urging of employees' attendance, respondent had promoted the Independent and clearly intimated its preference. It believed that the facts that the polling place was not on neutral territory; that no other organizations were on the ballot; that respondent freely accorded the organizers opportunity to carry on solicitation on plant premises during working hours; that it sponsored elections of employee representatives in the various departments of the plant; that it supplied one of its offices for meeting places, permitted collection of dues on company time and allowed plant facilities to be used by the Independent for posting its by-laws, proposed contract, minutes of meetings and dues payments, all these activities being continued over a long period of time, in the presence of supervisory employees whose silence the Board thought could only

amount to acquiescence and encouragement, constituted an obvious form of support violative of Section 8 (1) and (2) of the Act. The evidence was somewhat in conflict and the Board resolved all doubt in favor of its own witnesses. Needless to say, over such action, we have no supervisory or corrective jurisdiction. All questions of credibility are left to that body. We must accept the facts found by the Board upon disputed evidence.

The case is of border-line character. The absence of discrimination against Union 411, as found by the examiner, the absence of interference with that union, the asserted undisputed attempts to maintain a strict neutrality and, as we think, an intent to conform to the law might have justified equally reasonably a conclusion that the acts mentioned were not intentionally directed at any accomplishment of interference with the employees or with any desire to influence their choice of a bargaining agent. But we are not the tribunal for determination of issues of intent and purpose. Such are questions of fact, the function of determination of which is lodged in the Board.

We cannot say as a matter of law that the facts related, found by the Board, did not influence or restrain the employees in their choice of bargaining agent. On the contrary, they constitute a sufficient basis for the inference that respondent did not observe that strict neutrality and impartiality imposed upon it by the National Labor Relations Act when free selection by employees of their bargaining agent is involved. No matter what the employer's honest belief as to employment policy may be, no matter how much he may desire to aid his employees by his own suggestions, it is the purpose and intent of the law that when the employees embark upon a course of action necessary to the selection of a bargaining agent, they act freely and wholly without influence from the employer. We are not concerned with the wisdom or lack of wisdom of such a standard. We can only reassert that Congress has made it the employer's duty in such cases to observe the utmost of neutrality and impartiality and to accord to the employees an unhampered, uninfluenced right to determine their own labor affiliations. Labor Board v. Falk Corp., 308 U. S. 453, 60 S.Ct. 307, 84 L.Ed. 396; International Association of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed.

50. This is the essence of collective bargaining. Under the facts of this record, in fulfilling our function to correct only errors of law, we may not say that the Board was wrong in concluding that the action of respondent did have weight with the employees, did indicate the employer's preference and did, therefore, amount to imposition of influence upon the employees in favor of the Independent.

The order contains a direction that the employer shall cease and desist from and in any other manner interfering with the employees' rights guaranteed by Section 7. This provision, we think, is improper in view of the language of Mr. Justice Stone in Labor Board v. Express Pub. Co., 312 U.S. 426, at 433, 61 S.Ct. 693, at 698, 85 L.Ed. 930, where he said: "the authority conferred on the Board to restrain the practice which it has found the employer to have committed is not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct." Here, as in that case, in all other respects respondent has made an honest attempt to comply with the law. Under the Supreme Court's decision, this provision is improper.

The order will be modified by elimination of the objectionable paragraph; as modified, it will be enforced.