## NATIONAL LABOR RELATIONS BOARD
### v. SERVEL, Inc.
### No. 8686.

Circuit Court of Appeals, Seventh Circuit.

May 1, 1945.

Rehearing Denied June 14, 1945.

Alvin J. Rockwell, Malcolm F. Halliday, Helen F. Humphrey, Owsley Vose, and John E. Lawyer, all of Washington, D. C., for petitioner.

Isidor Kahn and William F. Little, both of Evansville, Ind., for respondent.

Before EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Petitioner seeks enforcement of an order made against respondent, pursuant to the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. The respondent is engaged in manufacturing electric refrigerators, air conditioning equipment and various military supplies at Evansville, Indiana, where it has more than 8,000 employees. On August 17, 1944, the board found that respondent had discriminatorily discharged Carl L. Peek, an employee in Department 21, in violation of Section 8 (3) of the Act and had engaged in acts

of interference and coercion in violation of Section 8(1) of the Act. Upon these findings the Board ordered respondent, its officers, agents, successors and assigns, to cease and desist from such unfair labor practices, to offer to reinstate Peek and to make him whole for any loss of pay resulting from his discharge, and to post appropriate notices in their plant. Respondent concedes jurisdiction.

The issues before the Court are:

1. Are the Board's findings of fact supported by substantial evidence; and

2. Is the Board order valid upon the facts found?

Peek was employed by the company September 8, 1943, and was released on December 17, 1943. The Board claimed and later found that Peek had been discharged on account of his union activities. Respondent contended that his discharge was due entirely to inefficiency, absence from his work and inattention to his duties. The work assigned to Peek was that of a drill press operator in Department 21, a small department with some 146 employees, of the Electric Refrigerator and Air Conditioning Division. In November of 1943, Peek discussed with his foreman, Elmo Stutzman, the question of permanency of his employment and explained that if he was to be retained that he desired to obtain some of his personal belongings from Gary, Indiana. Peek says that he told Stutzman, "I know I can't make the rate." Stutzman replied, "Well, according to that pretty near every man in here would be fired." He further says that Stutzman told him that his work "suited fine" and that as far as he (Stutzman) knew it looked like a lot of work ahead and that Peek would have a job at Servel as long as he wished. During this conversation, Peek requested a raise in wages, and he was subsequently given an increase of 3¢ per hour.

Peek worked part of his time on jobs at which he was compensated on a piece rate basis and part time on jobs in which he was compensated at day rates. The company had established certain efficiency ratings which are based entirely on the employee's production while engaged on piece work and do not reflect his efficiency while engaged on day work. Each employee is given a guaranteed rate, whether on piece work or day work and is also guaranteed that his minimum earnings will be 130% of his guaranty. Thus for the purpose of establishing the efficiency ratings (referred to in the conversation between Peek and Stutzman) an employee who earns 130% of his base rate is deemed 100% efficient. If he earns more than 130% of the base rate he earns more than the standard of efficiency set up by the company and if he earns under 130% he does not measure up to the standard of efficiency established by the company. During the period that Peek worked for the company his efficiency record was as follows:

| Period ending | September 10 | 57.4% |
| " " | September 24 | 47.4% |
| " " | October 8 | 85.5% |
| " " | October 22 | 75.1% |
| " " | November 5 | 85.2% |
| " " | November 19 | 113. % |
| " " | December 3 | 56. % |
| " " | December 17 | 69.8% |

Peek and a fellow employee, Jack Jarboe, early in December 1943, became interested in the possibility of organizing the employees of Department 21, under the United Electrical, Radio and Machine Workers of America (a CIO affiliate, hereinafter called union) and consulted its officials. Somewhat later, about December 10th, Peek and Jarboe obtained application cards and sought to get the signatures of employees who wished to join the union. They approached employees in the plant both before and after work, during the lunch hour and sometimes during working hours. Jarboe says that Stutzman, the foreman, asked him if he thought the union would benefit him, and upon Jarboe answering in the affirmative disagreed with him and stated that he did not want any union in there because it would hurt him. On December 17th Stutzman conferred with the Assistant Superintendent of the plant and advised him that he planned to discharge Peek and later the same day did discharge him, as he says for the reason that he was not efficient and not suitable for that type of work, and was loafing around on the job too much. Peek says that he does not believe this was the cause, but thinks that Stutzman fired him because of his union activities. He testified that Stutzman told him, "I know I promised you a steady job. Then you tried to mess me up."

Another employee, Charles Leach, testified that Stutzman said to him, "This union work you are carrying on gives me a ter-

rible headache. * * * Peek has been on company time soliciting and has been often times caught away from his work the same day that he was fired." Leach says that Stutzman also told him that he had no right to sign up employees on the company property and that he was working for the wrong man and should not be working for the union, and that Jarboe would not have been hired had he (Stutzman) known that Jarboe was such a strong union man. Peek, Leach, and Jarboe were the only employees called by the Board except foreman Stutzman. Of these, Leach and Jarboe remained on friendly terms with Stutzman and were still in the employ of respondent at the time of the hearing. So far as the record discloses, Peek alone was discharged.

Respondent's charge of inefficiency in relation to Peek's work as reflected by his bi-weekly efficiency ratings was not without support. In addition, it was shown by respondent's witnesses that Peek left his machine on numerous occasions and remained away longer than was deemed reasonably necessary, and seemed indifferent about his work. The record as a whole does not indicate loyalty to his employer by Peek. Respondent urges that the direct testimony of Stutzman to the effect that he discharged Peek for inefficiency and inattention to work, uncontradicted by any direct proof, must be accepted by the Board, particularly in view of the fact that the Board called Stutzman as its witness. We do not think this position sound. The statements attributed to Stutzman by Peek, Leach and Jarboe, if true, may reasonably be accepted by the Board as showing Stutzman's antagonism to the union; and viewing the discharge in the light of such antagonism the Board drew the inference that Peek was discharged because of his union activity. We cannot say that such result is without support in the record. While we think that the record affords ample justification for Peek's discharge for incompetence and infidelity to the tasks of his employer, yet we cannot say under all the circumstances that there is no evidence from which the Board could have drawn a different conclusion. We are not free to exercise our independent judgment on the evidence, but must limit ourselves to the rather perfunctory duty of determining whether there was any reasonable evidence upon which the Board may have reached the conclusion that it did. We think the Board was not bound to accept the statement of Stutzman as to his reasons for discharge, although his testimony was the only direct testimony on the subject and even though he had been called as a witness for petitioner. If the Board chose not to accept Stutzman's expressed reason, but to reach a different conclusion based upon circumstantial evidence, we are not at liberty under the facts disclosed in the record most favorable to the petitioner, to hold that it was without support.

We feel, however, that the order entered by the Board is too sweeping and too drastic in character. They were concerned only with the complaint of one employee, in one small department, where were engaged less that 2% of the employees of respondent. Moreover, the conversations between Stutzman and employees Leach and Jarboe were private conversations not had in the presence of other workers and were little more than an exchange of ideas on the question of the union coming into Department 21. The alleged statements, if true, had no effect upon Leach and Jarboe who remained at their posts and obviously had no effect upon other employees; and we think did not warrant the sweeping order entered by the Board.

To this end, the order should be modified by eliminating therefrom subsection (b) of paragraph (1) and the words "and (b)" from subdivision (1) of subsection (c) of paragraph 2 of the order.

The order should be further amended by adding after the words "its officers, agents, successors and assigns" in the preamble of the order, the words "as those words are construed by the recent opinion of the Supreme Court in the case of Regal Knitwear Co. v. N. L. R. B., 65 S.Ct. 478."

As thus modified and amended the order of the Board will be enforced.