**NATIONAL LABOR RELATIONS BOARD v. REED & PRINCE MFG. CO.**

No. 3549.

United States Court of Appeals
First Circuit.

March 21, 1952.

1. § 1303(2), Title 46, U.S.C.A.

2. § 1303(6), Title 46, U.S.C.A.

court to issue an order requiring Reed & Prince Manufacturing Company, Chester T. Reed, the company president, Ernest C. Boyd, vice-president, and Alden Reed, treasurer, to appear before this court, at a specified time and place, and show cause, if any there be, why they, and each of them, "should not be adjudged in civil contempt" for having failed and refused, and for continuing to fail and refuse, to comply with an enforcement decree which we entered more than ten years ago. N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 1941, 118 F.2d 874, certiorari denied 1941, 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549. We refrained from entering an *ex parte* showcause order because the petition presented a serious question as to the appropriate procedure, which this court had hitherto never had occasion to consider. Rather, on January 16, 1952, we entered an order directing respondents to file sworn answers to the allegations of the petition for adjudication in civil contempt; and further we directed the Board to file a brief setting forth arguments and authorities in support of proceeding by way of civil contempt as opposed to the statutory procedure of an administrative hearing culminating in a Board order and a petition for enforcement, respondents being directed to file an answering brief. Oral argument was heard on the Board's petition on March 5, 1952.

The original proceeding was instituted by the Board in the latter part of 1937 by the filing of its complaint against Reed & Prince charging the company with various unfair labor practices. After the usual proceedings, the Board, on May 15, 1939, found the company to have committed certain unfair labor practices and issued its order against respondent in terms which it deemed appropriate.

Thereafter the Board petitioned this court to enforce the said order. We sustained the Board's findings that the company had failed and refused to bargain collectively in good faith with the Steel Workers Organizing Committee, the accredited representative of its employees, in violation of § 8(5), and also § 8(1), of the

Winthrop A. Johns, Asst. Gen. Counsel, George J. Bott, General Counsel, David P. Findling, Associate General Counsel, and Julius G. Serot and Walter N. Moldawer, Attorneys, all of Washington, D. C., on brief, for petitioner.

Gerard D. Reilly, Washington, D. C., Julius Kirle and Reilly, Rhetts & Ruckelshaus, Washington, D. C., on brief, for respondents.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

We have before us a petition by the National Labor Relations Board asking this

Act, 29 U.S.C.A. § 158(1, 5); that the company had discriminatorily discharged four named employees, in violation of § 8(3) of the Act; and that the company had also violated the more general prohibition of § 8(1) of the Act by signing up the employees under individual contracts which imposed a restraint upon them in the exercise of their right to bargain collectively in the future as a result of provisions in the contracts which forestalled future collective bargaining upon matters which are frequent subject of negotiation between employers and employees.

Our decree, entered April 2, 1941, directed the company to take certain affirmative action, including (a) upon request to bargain collectively with Steel Workers Organizing Committee as the exclusive representative of its employees in the indicated unit; (b) to offer full and immediate reinstatement to the four employees who had been discriminatorily discharged, and (c) to make said employees whole for any loss of pay they might have suffered by reason of the discriminatory discharges. Our decree also directed respondent to cease and desist (a) from discouraging membership in Steel Workers Organizing Committee or in any other labor organization of its employees, by discriminating in regard to their hire and tenure of employment or in any other term or condition of employment; (b) from in any manner giving effect to the aforesaid individual contracts entered into by the respondent with its employees in violation of the Act; and (c) from refusing to bargain collectively with Steel Workers Organizing Committee as the exclusive representative of its employees. Finally, we approved and enforced a sweeping catch-all order of the Board, which directed that respondent cease and desist from "In any other manner interfering with, restraining or coercing its employees in the exercise of their rights to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed by Section 7 of the National Labor Relations Act [29 U.S.C.A. § 157]." We considered the propriety of this broad form of order at some length, 118 F.2d at pages 890–891, in the light of N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930, and concluded that a cease and desist order of this breadth was not inappropriate, in view of the multiple unfair labor practices established against respondent. Cf. May Department Stores Co. v. N.L.R.B., 1945, 326 U.S. 376, 386, 393, 66 S.Ct. 203, 90 L.Ed. 145; McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599.

Back in 1942 we entertained an earlier petition by the Board to adjudge Reed & Prince and certain of its officers in civil contempt for failure to comply with our decree of April 2, 1941. N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 1942, 130 F.2d 765. That proceeding arose out of a dispute between the parties as to the amount of back pay due to the four employees in accordance with the formula laid down in one of the affirmative terms of our enforcement decree. It did not involve any new and independent unfair labor practice alleged to have been in violation of the all-inclusive clause of our cease and desist order.

In support of its present petition the Board alleges the following facts: After entry of this court's enforcement decree of April 2, 1941, respondent company proceeded to bargain collectively, as directed, with Steel Workers Organizing Committee. In May, 1942, Steel Workers Organizing Committee became known as United Steelworkers of America, C. I. O. Thereafter the company continued to bargain with and recognize Steel Workers Organizing Committee under its new name, United Steelworkers of America, C. I. O., as the representative of its employees "until about October 1944, after which date there was a lapse in the bargaining relations". The cause of this lapse is unexplained; and it may perhaps be inferred that the union lost its majority status at that time. At any rate it is not suggested that the company was in violation of our decree for failure to bargain with the said union on and after October, 1944, up to July 20, 1950,

when, it is alleged, the Board, pursuant to the provisions of § 9 of the Act, 29 U.S.C.A. § 159, certified United Steelworkers of America, C. I. O., "as the collective bargaining representative once more for the employees for whom respondent Company had previously recognized and bargained with Steelworkers pursuant to the decree of this Court."

The Board's petition goes on to allege that, after the new certification of the union in July, 1950, the company, though it has gone through the motions of protracted negotiations with representatives of the union and has engaged in various subterfuges intended to obscure its noncompliance with our decree, has in fact failed and refused to bargain collectively in good faith with the certified union. As a result of such refusal to bargain, approximately all of the employees of respondent company went on strike; and said strike was still in effect at the date of the filing of the petition. Certain other acts of interference and coercion are alleged as violations of § 8(a)(1) of the Act.

In the face of these alleged unfair labor practices, the Board at first elected to proceed in the usual way, by the issuance of a complaint against Reed & Prince on April 13, 1951. A hearing was held before a trial examiner of the Board from April 30 through May 4, 1951, in a proceeding known as Reed & Prince Manufacturing Company and United Steelworkers of America, C. I. O., Case No. 1-CA-865. The complaint was actively contested by respondent at all stages of the proceeding. Voluminous testimony was taken and, in accordance with recommendations of the trial examiner's intermediate report, the Board, in a decision entered October 16, 1951 (one member dissenting), found that respondent had failed and refused to bargain with United Steelworkers of America, C. I. O., in violation of § 8(a)(5) of the Act and that a letter by respondent threatening the striking employees with loss of their jobs was in itself an independent violation of § 8(a)(1) of the Act, since the strike was caused by respondent's unfair labor practice of refusing to bargain and the strikers could not, therefore, legally be replaced. According-

ly the Board entered an order against respondent company in the usual terms, including a direction that respondent upon request bargain collectively with United Steelworkers of America, C. I. O., as the exclusive representative of all the employees in the appropriate unit and, if an understanding is reached, embody such understanding in a signed agreement.

The Board has not petitioned this court for enforcement of that new order. Attached to its present petition for adjudication in civil contempt, as exhibits in support of the allegations therein, is an affidavit by Roy H. Stevens, Jr., a field representative of United Steelworkers of America, C. I. O., and a transcript of the hearing before the trial examiner in the unfair labor practice proceeding, together with a copy of the intermediate report and the decision and order of the Board. It is alleged in the petition that on November 6, 1951, respondent company, through its counsel, by letter advised the regional director of the Board, "in effect, that respondent Company did not intend to comply with the decision of the Board and the order issued thereon." The letter, however, which is attached as an exhibit, merely states that the company believes the decision should be withdrawn and the order revoked inasmuch as "we feel that the decision by the majority of the members of the Board is not in accordance with the law, facts, and evidence in the case". The petition alleges that the company has continued its refusal to bargain collectively in good faith since the issuance of the Board's order.

The answer filed by respondent flatly denies the important factual allegations of the petition and contains many affirmative allegations of fact in support of its assertion that respondent has in all respects complied with the law. In particular the answer alleges that though the company has negotiated with the union representatives in good faith, the insistence of the union upon acceptance of a so-called "standard contract" without change or deviation prevented any agreement between the parties. There is further an allegation, supported by numerous exhibits, that "force, violence, and arson—and even the attempted murder

of the son of respondent, Alden Reed, characterized the conduct of the strike."

Under the normal procedure contemplated by the Act, the primary responsibility for the prevention of unfair labor practices is entrusted to an expert, specialized administrative board. The National Labor Relations Board issues its complaint, holds a hearing, and, upon the finding that unfair labor practices have been committed, issues what it deems to be an appropriate order for redressing such unfair labor practices and effectuating the purposes of the Act. Where numerous unfair labor practices have been established, the Board has usually deemed it appropriate to issue a cease and desist order in the broadest terms, comprehending any future unfair labor practice even though arising out of new and unrelated circumstances. Upon petition for enforcement the courts of appeals have frequently felt constrained, as we did in 1941, to issue an enforcement decree in like broad terms, so far as consistent with the holding in N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930. See May Department Stores Co. v. N. L. R. B., 1945, 326 U.S. 376 at page 389, footnote 10, 66 S.Ct. 203, at page 211, 90 L. Ed. 145. As more and more employers come under enforcement decrees in such broad terms, the courts of appeals will gradually supplant the Board as the primary trier of facts when future unfair labor practices are alleged, if the Board elects generally to proceed, as it has done in this case, by filing a petition for adjudication in civil contempt.

The Board suggests, it is true, that under the present petition we would not necessarily have to invoke the catch-all cease and desist order contained in our decree of April 2, 1941; that since United Steelworkers of America, C. I. O., is no more than Steel Workers Organizing Committee under another name, the refusal of respondent company to bargain in good faith with United Steelworkers of America, C. I. O., may be deemed a violation of the more specific term in our 1941 decree directing the company to cease and desist from refusing "to bargain collectively with Steel Workers Organizing Committee" as the exclusive representative of its employees. Respondent's answer, however, specifically denies that United Steelworkers of America, C. I. O., is the same entity as Steel Workers Organizing Committee—thus raising an issue of fact which we would have to determine in the Board's favor before we could find respondent in civil contempt of that specific term in our decree. Of course the Board contends in the alternative that, even if the present union is not the same entity as the old Organizing Committee, nevertheless the refusal to bargain with it is a violation of the broad clause in our cease and desist order. And in any event, if the company has been guilty of an unfair labor practice in refusing to bargain with this union, as alleged in the pending petition, the violation is referable to a new and independant set of circumstances, stemming from the representation proceeding conducted by the Board in 1950 as a result of which United Steelworkers of America, C. I. O., was certified as the exclusive bargaining representative.

The Board's present petition would cast upon the court the burden of conducting what promises to be a lengthy hearing, either by itself or by reference to a master, for the purpose of making an independent determination of whether the company has failed and refused to bargain collectively in good faith, in violation of the Act. It is not easy to see what the Board would gain by invoking such a procedure. If we found that the company was in civil contempt of our decree for refusing to bargain, as alleged, we would presumably not forthwith order the individual respondents to be put in jail until they should satisfy us that the company has proceeded to bargain with the union in good faith and thus has purged itself of the contempt. Sanctions would not immediately begin to pinch. What we would do, indeed what the Board in the present petition asks us to do, would be to enter an order requiring respondents to purge themselves of such civil contempt by bargaining in good faith with the union as the exclusive representative of the employees. It is only upon the failure of respondents to purge themselves of their civil contempt that the court is asked to issue

attachments against each of them. If, on the other hand, the Board had come to us with a petition to enforce its order of October 16, 1951, entered as the culmination of the usual administrative unfair labor practice proceeding, we would, if we sustained the findings of the Board, issue an order directing respondents, upon request, to bargain collectively with the said union. In such an enforcement proceeding we would be required to sustain the Board's findings of fact, if they were supported by substantial evidence on the administrative record considered as a whole. But on a petition for contempt, it would be our duty to make an independent finding of the facts, with the burden upon the Board to satisfy us, on a preponderance of the evidence, that the company has in fact failed and refused to bargain collectively in good faith, as alleged.

The Board contends that if it is required, in the case of an old offender, to institute for each new violation an unfair labor practice proceeding under § 10 of the Act, 29 U.S.C.A. § 160, with a petition to the court for enforcement of a new order, which petition could only result in a new injunction by the court, the offender would never be brought to account for what by hypothesis is contumacy of an existing court decree. See N. L. R. B. v. M. Lowenstein & Sons, Inc., 2 Cir., 1941, 121 F.2d 673, 674. But the present does not seem to be a case of a repeated offender, playing hide-and-seek with the Board in the manner suggested. (We shall be prepared to deal with such a case when it comes to us, not forgetting the sanctions of criminal contempt.) In obedience to our enforcement decree of 1941, Reed & Prince offered reinstatement to the four discharged employees and proceeded, in compliance with the decree, to bargain collectively with Steel Workers Organizing Committee. It is true a bona fide dispute arose in respect to the amount of back pay due to these employees, the amount not having been liquidated in our decree, which laid down only a general formula for its computation; and this dispute was brought before us on a proceeding for civil contempt in 1942. N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 130 F.2d

765. Perhaps we should not have proceeded by way of civil contempt at that time. See N. L. R. B. v. Bird Machine Co., 1 Cir., 1949, 174 F.2d 404 and footnote on 406. At any rate, we determined the amount of back pay due and ordered respondent to make payment to the employees in question, which presumably was done, since we heard nothing more of the matter. The company continued to bargain with the union representative from the date of our 1941 decree until October, 1944. The lapse of bargaining relations after that time is not alleged to be due to an unfair labor practice by the company. As already pointed out, the alleged refusal to bargain since July, 1950, was referable to a new certification by the Board and involves a new and independent set of circumstances unrelated to the unfair labor practices established by our 1941 decree.

Where the alleged contempt is the failure of the employer to take affirmative steps directed in our decree with a view to redressing the specific unfair labor practices, such, for example, as a reinstatement order or an order for the posting of notices, we would certainly entertain a petition by the Board for adjudication in civil contempt, as we did in N. L. R. B. v. Republican Publishing Co., 1 Cir., 1950, 180 F.2d 437. See N. L. R. B. v. Bird Machine Co., supra. Also, there may be circumstances in which we would deem it appropriate to entertain such a petition where alleged conduct of the employer, which would constitute a new unfair labor practice, would also be in violation of our all-inclusive cease and desist order. We shall not undertake now to define what those circumstances might be. We content ourselves with saying that the balance of considerations is against a proceeding by way of contempt at this time, under the circumstances now before us, particularly in view of the fact that the Board has already instituted and completed a new unfair labor practice proceeding against the company under § 10 of the Act culminating in a new order, which the Board could ask us to enforce. The present petition, as the Board concedes, is addressed to our discretion.

We do not suggest that merely because our decree is nearly eleven years old it has in any degree lost its efficacy as a continuing injunction, obligatory upon respondent company. If the Board should now proceed to file a petition for enforcement of its new order of October 16, 1951, and if upon examination of the administrative transcript we should find convincing indication that the company has in fact failed and refused to bargain in good faith, as alleged, and that such violation may be characterized as willful and deliberate, we would be free upon our own initiative to institute a proceeding in criminal contempt against respondents for violation of our 1941 decree.

The petition for adjudication in civil contempt is denied.