**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TALLAHASSEE COCA–COLA BOT-TLING COMPANY, Inc., Respondent.**

**No. 23447.**

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Elliott Moore, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Warren M. Laddon, Attorney, N.L.R.B., for petitioner.

O. R. T. Bowden, Robert C. Lanquist, Hamilton & Bowden, Jacksonville, Fla., for respondent.

Before PHILLIPS,* COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This case is before the Court upon the petition of the N.L.R.B. filed pursuant to Section 10(e) of the National Labor Relations Act (29 U.S.C.A. Sec. 151 et seq.) for enforcement of its order issued against Tallahassee Coca-Cola Bottling Company (Employer) on May 4, 1965.[1] The Employer refused to bargain to obtain judicial review of the Board's bargaining unit determination. Boire v. Miami Herald Publishing Co., 5 Cir. 1965, 343 F.2d 17, cert. den. 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70. The Employer's reason for refusing to bargain is that the bargaining unit certified by the Board is inappropriate.

The Board found that the Employer violated Section 8(a) (5) and (1) of the Act by refusing to bargain with the Teamsters, Chauffeurs, Warehousemen and Helpers Local No. 991 (Union) which was certified by the Board following a representation election.

On April 15, 1964, the Regional Director issued his decision and directed an election. He found two units appropriate—one composed of the Employer's eight route salesmen, and the other composed of all production and maintenance employees including truck drivers' helpers, utility men, shipping and receiving employees and cooler servicemen. The unit sought by the Union was the plant-wide unit, which would include the route salesmen. The Employer desired a unit including route salesmen, but excluding all other employees including maintenance employees.

The Union and Employer each requested review by the Board. The Employer charged that the Regional Director erred in failing to dismiss the petition after determining the unit requested by the Union was inappropriate. The Union argued that the Regional Director erred in his decision to establish the route salesmen in a unit separate from production and maintenance employers including truck drivers' helpers.

The Board, on May 7, 1964, granted the Union's request for review; the Employer's request was denied as raising no substantial issue. The Board reversed the Regional Director's determination and found that the appropriate unit was that sought by the Union, i. e., "all production and maintenance employees * * * including route salesmen, truck helpers, utility men, shipping and receiving employees and cooler servicemen * * *".

The Union won the Board election which was held on September 25, 1964, and was certified as the exclusive bargaining representative of the Employer's employees on October 5. Thereafter, the Employer refused to bargain, and the Union issued a complaint. The Employer's answer denied the appropriateness

---

* Of the Tenth Circuit, sitting by designation.

1. The Board's Decision and Order are reported at 152 NLRB 356.

of the unit certified. The General Counsel filed a motion for judgment on the pleadings, and the Employer filed objections contending that it was entitled to a hearing and that the General Counsel had failed to file his motion with a Regional Director in accordance with Section 102.24 of the Board's Rules and Regulations.

The General Counsel's motion was referred to a Trial Examiner by the Regional Director and the Trial Examiner issued an order to show cause why the General Counsel's motion for judgment on the pleadings should not be granted. The Employer chose to stand on its objections. The Trial Examiner found no merit in the Employer's objections since the sole issue raised by the pleadings was the appropriateness of the unit found by the Board.

The Board adopted the findings of the Trial Examiner and ordered the Employer to cease and desist from its unlawful conduct, to bargain with the Union upon request and to post appropriate notices.

The sole issue presented on this appeal is the appropriateness of the bargaining unit found by the Board. This requires deciding whether it is appropriate to include route-salesmen in the same unit with production and maintenance workers. If found to be appropriate, the Employer's conduct in refusing to bargain is unlawful under Section 8(a) (5) and (1) of the Act. We deny enforcement on the record presented and remand for further findings by the Board.

## I.

█ It is well recognized in this Circuit as elsewhere that judicial review of the Board's unit determination is narrowly limited. N.L.R.B. v. Schill Steel Products, Inc., 5 Cir. 1965, 340 F.2d 568, 574. As we stated in *Schill*, 340 F.2d 574:

"There are so many good reasons one may easily find for the propriety of any particular unit's serving as the bargaining agency that anyone attacking the appropriateness of a certified bargaining unit wages an uphill fight. Section 9(b) of the Labor Relations Act [29 U.S.C.A. Section 159(b)], and the cases interpreting it, give this Board wide discretion in choosing a bargaining unit. * * * *"

█ Our review does not extend to weighing the evidence upon which the Board acted and perhaps overruling the exercise of its discretion, but only to "'guaranty against arbitrary action by the Board.'" May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 380, 66 S. Ct. 203, 90 L.Ed. 145, 151.

## II.

The Employer is engaged in the bottling and sale of Coca-Cola and related soft drinks in Tallahassee, Florida. The Employer employs approximately 32 nonsupervisory-nonclerical employees, all of whom are under the general supervision of Plant Manager Earl Lambert. The route-salesmen in question are under the supervision of Sales Manager Tomberlin. There is no history of collective bargaining. The Employer has no separate sales force other than the route-salesmen in question, and is wholly dependent on the route-salesmen to promote its products in the Tallahassee area. This, of course, is aside from Coca-Cola's national advertising programs.

Six of the eight route-salesmen are assisted by truck helpers who are hired by Sales Manager Tomberlin and paid directly by the Employer. Four of the route-salesmen do all of their own driving, two because they have no helper and two because their helpers cannot drive. None of the route-salesmen loads or unloads his truck at the plant, but those who have no helper must do all of their loading and unloading at their customers' establishments. There is some interchange of work between helpers and plant utility men; the utility men occasionally ride on the trucks to help the route-salesmen. On these occasions the truck drivers' helpers work in the plant. Three route-salesmen are paid a salary; five are paid a base salary plus a commission for each case of soft drinks sold. The

three salaried route-salesmen advance to a commission status when the opportunity to take on a larger route is available. All of the Employer's employees receive paid vacations and sick leave and work about the same number of hours, but the route-salesmen enjoy certain retirement and insurance benefits unavailable to production and maintenance employees.

The route-salesmen operate in prescribed routes taking orders, setting up promotional displays in the customers' stores, encouraging the customers to order more bottled Coca-Cola rather than fountain Coca-Cola (not sold by the Employer), and to buy Employer's "coolers" (refrigerated vending machines). The Employer also furnishes the route-salesmen with leads concerning the opening of new stores on their routes, to be followed up by the route-salesmen.

In hiring route-salesmen, the Employer looks for neatness in dress and sales ability in their contacts with the public. All route-salesmen participate in training programs comprised of meetings, training films and the like. The route-salesmen are considered to be "salesmen" by the Employer. The nature of the route-salesmen's duties necessarily requires that they be away from the plant during the day, except to have the drinks loaded and to return the cash receipts and empties at the end of the day.

### III.

In the case of Plaza Provision Company, 134 N.L.R.B. 910, the Board decided to modify its policy with respect to the unit placement of alleged driver-salesmen. Theretofore, the policy of the Board had been to include the drivers in production and maintenance units unless the parties agreed to exclude them, or unless another labor organization sought to represent them. The Valley of Virginia Cooperative Milk Producers Association, 127 N.L.R.B. 785. In *Plaza* at 134 N.L.R.B. 911, 912, the Board clearly enunciated the test to be applied in future cases:

"Our experience has shown us that the duties of employees who drive truck [sic] or automobiles and distribute products of their employer from their vehicles may vary greatly, depending upon the given employer's sales and distribution policies and practices. In some instances, the employees have little or no function in making or promoting sales of the employer's products but are essentially deliverymen or truckdrivers. In others, their function is clearly selling and sales promotion, and driving vehicles is merely an incident of such function. There are also instances where the employees perform both functions and a determination as to which predominates will depend upon a close examination of all the facts as to their duties and employment conditions.

"We believe that where the employees in question are shown to be engaged in selling their employer's products and they drive vehicles and make deliveries of such products as an incident of such sales activity, they are essentially salesmen and have interests more closely allied to salesmen in general than to truckdrivers or to production and maintenance or warehouse employees."

In excluding the route-salesmen from the bargaining unit, the Board noted the following factual considerations: (1) the employer was a wholesale food distributor, (2) the territory involved consisted of five sales districts, in three of which the sales manager supervised only the sales employees and in the remaining two districts the sales manager supervised all the employees, (3) the route-salesmen operated on prescribed routes in trucks or station wagons, (4) they sold all lines of the employer's products and made deliveries from their vehicles, (5) the route-salesmen are paid a salary plus incentive bonuses in connection with their sales promotion, whereas warehousemen and truckdrivers receive a straight salary, (6) there is no interchange between the route-salesmen and warehouse employees or truckdrivers, and finally, (7) fringe benefits, such as vacation, sick

leave, accident insurance, and Christmas bonuses, are the same for all employees.

Following *Plaza* there have been several cases dealing with the inclusion-exclusion problem associated with route-salesmen: E. H. Koester Baking Co., Inc., 136 N.L.R.B. 1006; Gunzenhauser Bakery, Inc., 137 N.L.R.B. 1613; Marks Oxygen Co., 147 N.L.R.B. 228, and Coca-Cola Bottling Company of Baltimore, 156 N.L.R.B. 450.

In *Koester* there had been no previous history of collective bargaining, as is true in the instant case. The Union sought to exclude the driver-salesmen while the Employer sought their inclusion. In excluding the driver-salesmen from the unit the Board set forth the relevant factors: (1) the Employer had no other salesmen than the driver-salesmen, (2) they were paid a guaranteed salary plus commission, and were under the control of the sales manager, (3) the Employer admitted they were allowed to call on new accounts, (4) the driver-salesmen were away from the plant during the day except for the time spent loading and unloading their products, and (5) the Employer attempted to minimize the selling activities of the driver-salesmen while stressing the interdependence of production and selling functions in its business. In conclusion, the Board stated:

> " * * * these driver-salesmen promote the sale of the Employer's products as an essential part of their work. Based on this record we find that not only have these driver-salesmen little contact with production and maintenance employees, but that their interests by reason of their selling duties are materially different from those of employees in the production and maintenance unit."

136 N.L.R.B. at 1008.

*Gunzenhauser* followed, and the Board recognized its previous decisions in *Plaza* and *Koester* and stated further that the bakery plant in *Gunzenhauser* was comparable to that in *Koester*. Again, the Union was seeking to exclude the driver-salesmen, and was opposed by the Employer. The pertinent portions of the Board's decision reads as follows:

> "In the instant case, the Employer has no separate force of salesmen who solicit orders to be delivered later by drivers, but as in *Koester* the success of the Company's sales program depends on the driver-salesmen. They function as order takers and make their deliveries on the basis of such orders. Although neither solicitation of customers for the purpose of increasing sales nor solicitation of new accounts is a major part of their duties, the driver-salesmen are responsible for the success or failure of the Employer's sales and collection from its 30,000 home delivery accounts. Since the driver-salesmen deal directly with customers and must satisfy them in order to retain their patronage, their value to their Employer is based on qualities not required of plant employees and, concomitantly, their interests and working conditions are materially different from those employees who work exclusively in the plant. Accordingly, we find that the driver-salesmen and the solicitors are predominately engaged in the Employer's sales and distribution system, and we shall exclude them from the unit sought by the Petitioner."

137 N.L.R.B. 1615–1616.

The duties of the driver-salesmen in *Gunzenhauser* correspond substantially with the duties of the drivers of the Employer in the instant case.

In *Marks Oxygen* the unit sought by the Union was the plantwide unit, including the drivers. The Employer contended that the decision in *Koester* required that the drivers be excluded. The Board rejected the Employer's reading of *Koester*, acknowledging that *Koester* reversed the policy of *requiring* the inclusion of drivers, but did not reverse such policies as: "(a) a plantwide unit is presumptively appropriate; (b) a petitioner's desires as to the unit is [sic] always a relevant consideration; and (c) it is not essential that a unit be the *most* appropriate unit." 147 N.L.R.B. at 230.

*Marks Oxygen* is strenuously urged as controlling by the Board. However true the policies set forth in *Marks Oxygen* may be, the fact remains that the opinion is strangely silent as to *any* selling activity undertaken or participated in by the drivers. The drivers in question in *Marks Oxygen* were exclusively referred to by the Board as "truckdrivers", and nowhere is there any reference to "driver-salesmen" or "route-salesmen" as was true in *Koester* and the succeeding cases. The *Marks Oxygen* drivers were paid by the trip, rather than commission on sales, and their sole duty was to "transport the Employer's product to both local and distant points." The conclusion is inescapable that the drivers were truckdrivers or deliverymen in the true sense of the word without the remotest suggestion of factors calling for exclusion from the bargaining unit because of sales activities. *Marks Oxygen* is factually inapposite.

Despite the obvious, relevant distinctions existing between *Marks Oxygen* and the instant case, the Board found it to be controlling. Not only was it found to be controlling, but it was the only case cited by the Board without any attempt to explain the apparent departure from the criteria and factual similarities found in *Plaza, Koester* and *Gunzenhauser*. After an abbreviated statement of the facts, the Board disposed of the entire case in one paragraph. The brevity of the relevant portions of the Board's opinion allows it to be quoted in full:

"The relationship between the route salesmen and the plant employees here is substantially the same, in all relevant respects, as that between the drivers and the plant employees in the recently decided Marks Oxygen Co. case, 147 NLRB No. 31. We there held that the drivers had a sufficient community of interest with the production and maintenance employees in the plant to warrant their inclusion in the plantwide unit, and that where, as here, the sole labor organization involved seeks to represent them in a plantwide unit, we would not exclude

them. We find nothing in the instant case that would require, contrary to applicable precedent, the exclusion of the route salesmen from the presumptively appropriate plantwide unit here sought."

As our previous examination of *Marks Oxygen* suggests, the preceding conclusory paragraph of the Board is incorrect, or at the very least, represents a superficial disposition of the relevant issue. The Board in *Marks Oxygen* and the instant case has gone far beyond allowing the Union's desires to be a "relevant consideration". Instead, the Union demands were apparently given controlling effect, while at the same time the Board ignored the rules laid down in *Plaza.* Moreover, such a policy ignores the recent commitment of the Board to weigh the objections of the Employer to the inclusion of driver-salesmen in the bargaining unit along with production and maintenance workers. American Trailer and Equipment Corp., 151 N.L. R.B. 867, 873.

Subsequent to *Marks Oxygen,* the Board decided Coca-Cola Bottling Company of Baltimore, 156 N.L.R.B. 450. The Union sought to have the route-salesmen excluded from the unit. The facts in *Baltimore* are virtually identical to those of the instant case. The Board recognized the "recent policy modification with respect to unit placement of driver salesmen", citing *Plaza* and *Koester*, and then proceeded to examine "the functions and duties of the route-salesmen in view of the criteria established under current Board policy". It is interesting to note that the present record reveals no such examination. After a thorough recitation of these "functions and duties", which correspond almost completely with those revealed by the present record, the Board stated:

" * * * we are persuaded that the functions and working conditions of the route salesmen are sufficiently distinct from the production and maintenance employees to find that they have a separate community of interest and that they are performing essential-

ly a sales function. We therefore believe that they *need not be* incorporated into an inside unit of employees performing primarily production, maintenance, and storage activities." (Emphasis added.)
156 N.L.R.B. 453.

In a supplemental memorandum to the Court, the Board urges the significance of the italicized language in *Baltimore*. The position of the Board is that although it was permissible to exclude the driver-salesmen in one case (*Baltimore*), it is equally permissible to include them in a unit of production and maintenance workers in another. Admittedly, the Board is vested with great discretion in its selection of the appropriate unit, and it is conceivable that different results could be reached on identical records with the Court powerless to order reversal, but this is not the question presented. We are confronted in the instant case with a discretionary choice made by the Board, but without supporting reasons. What we recently stated in Rayonier, Inc. v. N.L.R.B., decided July 12, 1967, 380 F.2d 187, is equally applicable here:

"Section 8(b) of the Administrative Procedure Act (5 U.S.C., Sec. 1007) requires an agency in any case to include in its decision 'its findings or conclusions as well as the reasons or basis therefor'. This requirement takes on added importance when the decision is an apparent reversal of a previously declared rule. This is not to say that the Board may not change its view of what test is to be applied in unit determination cases and what factors are to be considered in its application. If it does so, however, it should announce the change of mind and the reasons supporting the change."

Likewise, in *Rayonier,* at 380 F.2d 194, we made the following observation:

"In N.L.R.B. v. Metropolitan Life Insurance Company, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965), the Supreme Court held that Board action cannot be properly reviewed when the Board fails to articulate its reasons for its decision, that when the Board exercises the discretion conferred upon it by Congress it must disclose the basis of its order and clearly indicate that it has exercised that discretion with which Congress has empowered it. It was further held that the 'court may not accept appellate counsels' *post hoc* rationalizations for agency action'. To do so, said the Court 'would not vindicate, but would deprecate the administrative process for it would "propel the court into the domain which Congress has set aside exclusively for the administrative agency" '."

The Board has made an unexplained departure in the instant case from the factors and criteria set forth in *Plaza* and *Koester* and reiterated in *Gunzenhauser* and *Baltimore.*[2] We deny enforcement and remand the case for further Board findings with respect to such criteria, or in the alternative, direct the Board to set forth its reasons for departure from such criteria.[3] We add that we do not hold that the decision in *Plaza requires* the exclusion of driver-salesmen from the bargaining unit in all instances, but we do hold that the relevant criteria must be explored. Columbine Beverage Company, 138 N.L.R.B. 1297.

Since we decide that the case must be remanded, we do not reach the Employer's contention that it was denied the hearing afforded by Section 10(b) of the Act.

Enforcement denied; remanded with directions.

2. By unexplained, we mean that the brief, superfical reference to the obviously distinguishable case of *Marks Oxygen* is tantamount to no explanation at all.

3. See further, Rains, Determination of the Appropriate Bargaining Unit by the NLRB: A Lack of Objectivity Perceived, 8 B.C.Ind. and Comm.L.R., 175 (Winter 1967).