**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, LOCAL UNION 576, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Wilson Wholesale Meat Company, Inc., Intervenor.**

No. 74–1359.

United States Court of Appeals, District of Columbia Circuit.

Aug. 1, 1975.

Robert S. Sugarman and Charles Orlove, Chicago, Ill., were on the brief for petitioner.

Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr. and Thomas A. Woodley, Attys., N. L. R. B., were on the brief for respondent.

Paul S. Kuelthau, and John J. Faust, St. Louis, Mo., were on the brief for intervenor.

Before MacKINNON and WILKEY, *Circuit Judges,* and JAMESON,* *United States Senior District Judge* for the District of Montana.

PER CURIAM:

Local 576 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, sought recognition as bargaining agent for the employees of the Wilson Wholesale Meat Packing Co., Inc., a Missouri corporation engaged in the processing and wholesale distribution of meat, fish, and potato products. The Company denied the Union's request because of its doubt that the Union enjoyed majority status in an appropriate bargaining unit of the Company's employees. The Union lodged unfair labor practice charges with the National Labor Relations Board in September and October of 1972, alleging, *inter alia,* that the Company's refusal to recognize the Union constituted a refusal to bargain in violation of section 8(a)(5) of the National Labor Relations Act.[1] The Union also charged the Company with violations of section 8(a)(1) of the Act[2] because of its decision to restrict smoking and conversation during working hours, its requirement that employees wash their own coffee cups, and the tendency of its co-owners toward increased observation of the performance and habits of Company personnel.

While the NLRB found the Company in violation of section 8(a)(1) for certain statements and activities explicitly designed to discourage unionization of its operation, the Board rejected the findings and conclusions of its Administrative Law Judge on the issues outlined above and concluded that the Company had acted reasonably both in refusing to accept the Union's majority status and in modifying certain rules involved "in the routine day-to-day operation of [the] plant."[3] The Union now petitions this court for review of these latter aspects of the Board's order under section 10(f) of the Act.[4]

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 29 U.S.C. § 158(a)(5) provides:
   (a) It shall be an unfair labor practice for an employer—
   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

2. 29 U.S.C. § 158(a)(1) provides:
   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title . . ..

3. JA 383.

4. 29 U.S.C. § 160(f) provides:
   (f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section

Dispute concerning the appropriate bargaining unit to represent the Company's employees focuses on the function and conditions of employment of several different categories of personnel. The Board found that production employees in the plant were "generally responsible for preparing the orders for delivery which includes removing the meat, fish or potatoes from the cooler and freezer, slicing and wrapping it, and loading it on the delivery trucks." [5] Driver-salesmen aided the production employees in the moving, slicing and wrapping of the meat products, participated in the loading process, followed designated delivery routes, and returned to the plant. Both sorts of employees were under the direct supervision of a single Plant Manager, as was Philip Magruder, a driver-salesman distinguished by apparent but unexercised authority to recommend the hiring and firing of fellow driver-salesmen and by the fact that he did not have a regularly assigned route, but replaced or assisted other drivers as he was needed. This complement was aided by Norman Gordon, a salesman whose duties and remuneration were similar to those of the driver-salesmen but who operated in a more localized area, and by Helen Bryant, a clerical employee who performed numerous in-plant bookkeeping tasks and occasionally assisted production employees beginning in July 1972.

The Board reviewed the nature and variety of the tasks performed by these categories of employees, paying attention to the hours each worked, the perquisites to which they were entitled, and the basis and size of their earnings. Its pertinent conclusion of law was that the "following employees constitute an appropriate bargaining unit within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time production employees and drivers, the driver-salesmen, and the in-town salesman employed by Respondent at 1207 Rogers Street, Columbia, Missouri, but excluding office clerical employees, guards and supervisors as defined in the Act, and all other employees." [6]

This bargaining unit consisted of 22 members on August 30, 1972, the date of the Union's initial demand for recognition, and up to four more by September 12, 1972, the date the Company received the Union's formal written demand. On August 30 the Union presented authorization cards indicating it represented 11 Company employees. Thus the Board concluded:

> In the absence of record evidence to establish that the Union represented a majority of the employees in the unit found to be appropriate, . . . on August 30 or . . . on September 12, or for that matter at any other time, there is no basis, on this record, to find that Respondent violated Section 8(a)(5) of the Act by refusing to recognize and bargain with the Union.[7]

The Board also found that the Company's actions in "standing over employees and scrutinizing them and imposing more onerous work rules respecting talking, smoking, and housekeeping chores" did not involve "serious departures from past practices" and were not significant enough to reach the level of section 8(a)(1) violations.[8] The Union now assails these conclusions as arbitrary and capricious and insists that a bargaining order should issue, citing *NLRB v. Gissel*

---

2112 of Title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

5. NLRB Br. 5.

6. JA 383.

7. JA 382.

8. JA 382–83.

*Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), and this court's decision in *Local 195, Wine & Liquor Salesmen v. NLRB*, 146 U.S.App.D.C. 383, 452 F.2d 1312 (1971).

In *Local 347, Meat Cutters v. NLRB*, 137 U.S.App.D.C. 248, 422 F.2d 685 (1969), this court identified two stages to the Board's determinations concerning appropriate bargaining units: first, the Board is to determine "which individuals are 'employees' within the policy of the Act"; second, it is to isolate the "group within the class of employees [which] shares a community of interests such that representation by a single bargaining agent will meet the statutory goal of 'assur[ing] to employees the fullest freedom in exercising the rights guaranteed' by the Act." 137 U.S.App.D.C. at 252, 422 F.2d at 689. The court cited to both section 9(b) of the Act, directing the Board to "decide in each case" what constitutes an appropriate bargaining unit, and to section 9(c)(5), providing that "the extent to which the employees have organized shall not be controlling" in determining the appropriate unit, in its search for clues to the policies of the Act concerning the inclusiveness of units. The court conceded that the statute offers little guidance to that particular inquiry, but significantly, its opinion *presumed* that identification of the appropriate unit is the Board's responsibility.

The procedure the Board followed here is consonant with the approach outlined in *Local 347.* The Board concluded that Philip Magruder was not a supervisor within the intendment of section 2(11), that Helen Bryant should be classified a "plant clerical" rather than an "office clerical," and that Norman Gordon's localized duties as "in-town salesman" did not distinguish him from the general group of driver-salesmen. It identified a community of interests shared by these three individuals, by in-plant production personnel, and by the driver-salesmen, based on schedules, skills, and benefits. Thus it determined that a single bargaining unit was appropriate for representation of this entire collection of employees.

The Union challenges the Board's failure to reach the explicit conclusion that the less inclusive unit the Union supported was inappropriate, citing copious authority for the proposition that the Board may not create a *more appropriate* unit when the Union proposes one which is *an* appropriate unit under the statute.[9] We do not dispute this principle; rather, we affirm it, and note that the Board acted in obedience to it. Confronted with the Administrative Law Judge's conclusion that the diverse interests of production employees and driver-salesmen warranted separate bargaining units, the Board responded tacitly, "We disagree." While a less oblique rejection of the proposed unit might have obviated this litigation, we can only conclude that the Board fulfilled its obligation by finding inappropriate the scheme which the Union and the ALJ suggested. The clear inference to be drawn from the Board's decision is that further segregation and segmentation of the interests of the Company's employees would have rendered the resulting units inappropriate. Because record evidence belies the Union's claim that the Board acted arbitrarily and capriciously in failing to recognize its majority status, issue a bargaining order, and find the Company guilty of further 8(a)(1) violations, we affirm the Board's decision.

9. *See, e. g.,* Tallahassee Coca-Cola Bottling Co., Inc., 168 NLRB 1037, *upon remand from* 381 F.2d 863 (5th Cir. 1967), *enforced,* 409 F.2d 201 (5th Cir. 1969); Dixie Bell Mills, Inc., 139 NLRB 629; Morand Brothers Beverage Co., 91 NLRB 409, *remanded on other grounds,* 190 F.2d 576 (7th Cir. 1951); Smith Transfer Co., Inc., 100 NLRB 834, *enforced,* 204 F.2d 738 (5th Cir. 1953).