NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

KIT MANUFACTURING COMPANY,
Inc., Respondent.

No. 18940.

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1964.

Rehearing Denied Sept. 15, 1964.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack and Theodore J. Martineau, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Eli A. Weston, Boise, Idaho, for respondent.

Before CHAMBERS, MERRILL and DUNIWAY, Circuit Judges.

MERRILL, Circuit Judge.

This case is before the court upon petition of the National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act as amended, 29 U.S.C. § 160(e), for enforcement of its order issued against respondent company on June 7, 1963. The Board's decision and order are reported at 142 NLRB No. 107.

The charged unfair labor practices occurred at the respondent company's plant in Caldwell, Idaho, where the company manufactures trailers and mobile homes.

The Board found three violations. First, that the company had violated § 8 (a) (5) and (1) of the Act, 29 U.S.C. § 158(a) (5) (1), by refusing to bargain collectively with the Union; second that the company had violated § 8(a) (1) of the Act by assisting and encouraging an employee in the circulation of a petition to decertify the Union; third that the company had violated § 8(a) (3) and (1) of the Act, 29 U.S.C. § 158(a) (3), (1), by its refusal to reinstate an employee who had participated in a strike against the company's unfair labor practices.

■ As to the first violation the Board adopted the findings and conclusions of the hearing examiner, based upon a lengthy recital of acts and conduct.[1] The hearing examiner concluded that "the company has, on and after June 15, 1962, failed and refused to bargain collectively with the Union, and thereby interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in § 7 of the Act, in violation of § 8 (a) (5) and (1) thereof."

The company asserts that throughout it acted in good faith. Further, it seeks to justify its conduct in several ways.[2]

These contentions were made before the hearing examiner, and are dealt with in his intermediate report. For the reason and upon the findings there set forth the conclusions of the hearing examiner that the company had not acted in good faith in its dealings with the Union cannot be overruled.

We conclude that as to this violation the order of the Board is entitled to enforcement.

■ As to the second violation, it appears that one Blair, an employee of the company, approached the plant manager for a pay raise on behalf of the employees and was told that no raise could be granted because it would bring forth unfair labor practice charges from the Union. Shortly thereafter Blair discussed the matter with other employees and later told the plant manager that he wished to circulate a petition to decertify the Union and asked for company permission. The plant manager refused permission. Blair then said he was going to do so anyway. The plant manager then stated that "there is nothing I can do to

1. We see no need to set these forth in detail. They included sending to the employees (but not to the Union) on June 15, 1962, a proposed incentive plan; unilaterally instituting a 10-cent-an-hour wage increase on the day on which the employees struck the company; a refusal to negotiate until after the Board had handed down its decision on another charge of unfair labor practice against the company then pending before the Board; the company's request, as a condition to negotiation, that the Union withdraw its charges against the company.

2. It contends that it had in good faith bargained to an impasse; that it had in good faith doubts that the Union could claim to represent the employees; that it could with propriety postpone negotiations until disposition of the charge of unfair labor practice, then pending before the Board.

stop you from doing this; you're 21 years old and you know your own mind"; but that Blair had no permission to do so. Blair did circulate the petition during working hours. However, being advised that it was defective in form it was never formally presented.

The hearing examiner concluded that by failing to warn Blair that he could not solicit signatures during working hours without violating company rules, and by failing to discipline or reprimand him, the company had "aided and assisted Blair in the circulation of his petition," in violation of § 8(a) (1). The Board agreed with this conclusion.

In other words, the hearing examiner and the Board have both found that the company, by this failure to come actively to the defense of the Union, has interfered with, restrained or coerced its employees in their rights to self-organization—the conduct proscribed by § 8(a) (1).

We cannot agree. There is no showing whatsoever of active company support, encouragement or cooperation. There is only a showing of a failure to forcibly prevent, obstruct or punish action taken by an employee entirely on his own initiative with knowledge that company permission was withheld and taken in accordance with the wishes not of the company but of himself and certain of his fellow employees. This, without more on the company's behalf, in our judgment cannot constitute company interference, restraint or coercion of its employees.

As to this asserted violation, the order will not be enforced.

The third violation has to do with one Tveidt, a company employee. The Board found that the company had discriminatorily discharged him in violation of § 8(a) (3) and (1) of the Act.

Tveidt had gone on strike with the other striking employees, but had then voluntarily returned to work. Subsequently, without giving the company notice, he had walked off the job and rejoined the picket line. When the strike terminated the other striking employees were reinstated. Tveidt was not.

The plant manager testified that Tveidt was discharged for violation of a company rule: failing to report for work after the lunch period without punching out or telling his foreman that he was leaving. If he left to engage in concerted action, however, the discharge would have been discriminatory, notwithstanding such violation. Giustina Brothers Lumber Company, 116 NLRB 700, 735, enforced sub nom. NLRB v. Giustina Bros. Lbr. Co. (9 Cir. 1958) 253 F.2d 371, holds that a group of employees who accepted re-employment for a few days during a strike and then rejoined the strike were entitled to reinstatement, the same as the other strikers. In NLRB v. Washington Aluminum Co. (1962) 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 the Supreme Court held that since the conduct of a group of employees in walking off their jobs in protest of cold working conditions was concerted activity protected under § 7 of the Act, discharging the employees for such conduct violated § 8(a) (1) even though the walkout violated a plant rule forbidding employees to leave their work without permission of the foreman. In Home Beneficial Life Insurance Co. v. NLRB (4 Cir. 1947) 159 F.2d 280, it was held that an employer could not discharge its insurance agent employees for failing to report one morning to their respective offices before beginning their outside work, where such failure to report—even though a violation of a company rule—was the beginning of a strike by those employees.

In the instant case the hearing examiner, in his interim report, noted Tveidt's testimony that on the morning of the day he returned to work some of the employees laughed at him and made remarks the substance of which he did not overhear, and that during lunch he met with four other returning strikers. "Seemingly," continued the examiner, "Tveidt mentioned what had happened that morning and he, Egan and Post decided not to return to work at the

end of the luncheon period." The examiner concluded:

"Here the undisputed evidence shows that Tveidt left his employment for purely personal reasons, not because of any unfair labor practices on the part of the company or in furtherance of the objectives of the strike. Accordingly I find that irrespective of whether he voluntarily quit his employment or was terminated for leaving his job he was not thereafter entitled to reinstatement as a striking employee (The W. T. Raleigh Company, 90 NLRB, 1924–1927)."

The Board differed. In its order it stated:

"The mere fact that he voluntarily went back to work for a few hours on July 23 does not imply that his dissatisfaction over the unfair labor practices ceased, especially when, only shortly thereafter, he rejoined the strike. Unlike the employee in Rawleigh, Tveidt knew the Respondent's unfair labor practices were continuing, and, irrespective of the immediate cause of his failure to return to work in the afternoon after lunch on July 23, his actions thereafter show that he left the job in order to associate himself actively with the strikers in protesting the unfair labor practices. For, by joining the picket line, Tveidt clearly evidenced his continuing interest in his employment and working conditions and his intent to resume his status as an unfair labor practice striker. Furthermore, the Respondent knew Tveidt was still on strike. Reber, having seen Tveidt on the picket line, should have known he had not quit and continued to have an interest in his employment, particularly since Reber was unaware of any other reason why Tveidt might have left the plant."

The Board appears to have inferred from the record that Tveidt's walkout was so closely related to the strike that it could not be cause for his discharge where, as here, neither the walkout nor any other conduct of Tveidt as a striker or picketer amounted to the serious strike misconduct which forfeits the striker's right to reinstatement.[3] We cannot say that this inference was unreasonable or unsupported by substantial evidence.

Moreover, the result would be the same even if, as found by the examiner, Tveidt's walkout was not initially related to the strike but was motivated solely by other, personal reasons, with the result that, being not part of protected activity but merely a violation of a company rule, it would have been ground for Tveidt's immediate discharge. See NLRB v. Industrial Cotton Mills (4 Cir. 1953) 208 F.2d 87; Home Beneficial Life Insurance Co. v. NLRB, supra; cf. Hamilton v. N. L. R. B. (6 Cir. 1947) 160 F.2d 465, 469. Here the plant manager testified that when one of those who had walked off with Tveidt returned the next morning he was put back to work, and that Tveidt's job had been held open "for several days" before Tveidt's discharge was made final. Therefore it would appear clear that Tveidt was discharged not simply because of the walk-off but also because of his failure to return within "several days." Since he did rejoin the strike the day following his walkout, or shortly thereafter, the discharge was thus in essential part on account of his participation in the strike. It therefore was a violation of § 8(a) (1) and (3).

The Board ordered the company to reinstate Tveidt and to reimburse him for any loss of pay he may have suffered by

3. See NLRB v. Industrial Cotton Mills (4 Cir. 1953) 208 F.2d 87. Compare NLRB v. Fansteel Metallurgical Corp. (1939) 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 and NLRB v. Kelco Corp. (4 Cir. 1949) 178 F.2d 578; with NLRB v. Buitoni Foods Corp. (3 Cir. 1962) 298 F.2d 169, 174–175; and NLRB v. J. Mitchko, Inc. (3 Cir. 1960) 284 F.2d 573, 576–577.

reason of the company's failure to reinstate him. The order in this respect is entitled to enforcement.

Decree will be entered enforcing the order as prayed as to the first and third violations specified and denying enforcement as to the second violation specified.