81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BARTLETT NUCLEAR, INC., Respondent.
 No. 94-70508.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1996.*
Decided March 28, 1996.
 
 1
 ORDER ENFORCED.
 
 
 2
 Before: PREGERSON and T.G. NELSON, Circuit Judges, and EZRA,** District Judge.
 
 
 3
 MEMORANDUM***
 
 OVERVIEW
 
 4
 International Brotherhood of Electrical Workers (Union) filed unfair labor charges against Bartlett Nuclear, Inc. (BNI), concerning actions that took place during a labor strike at a temporary BNI job assignment at Pacific Gas & Electric's (PG & E's) Diablo Canyon Nuclear Power Plant (Diablo Canyon). After a hearing, the Administrative Law Judge (ALJ) issued a decision finding that BNI violated § 8(a)(1) and (3) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1) and (3). The National Labor Relations Board (NLRB) affirmed the violations found by the ALJ and adopted the ALJ's recommended order. The NLRB is now before this court on an Application for Enforcement. We have jurisdiction under 29 U.S.C. § 160(e), and we grant enforcement of the NLRB's order.
 
 ANALYSIS
 A. Standard of Review
 
 5
 Decisions of the NLRB will be upheld on appeal if its findings of fact are supported by substantial evidence and if the agency correctly applied the law. NLRB v. General Truck Drivers, Local No. 315, 20 F.3d 1017, 1021 (9th Cir.), cert. denied, 115 S.Ct. 355 (1994).
 
 
 6
 B. The Decision to Eliminate Jobs of Striking Employees
 
 
 7
 BNI claims that the NLRB erred in finding that BNI either discharged or abolished the jobs of the striking employees. We reject this claim.
 
 
 8
 Shackelford repeatedly told the striking employees that their jobs would be "abolished" if they did not return to work by the March 29 deadline. Shackelford's statements, coupled with his giving the nonreturning strikers their final paychecks, could reasonably have been understood by the striking employees to mean that BNI was abolishing the chance of both present and future employment with BNI. Thus, this conduct constituted a "discharge" in violation of the Act. See NLRB v. Champ Corp., 933 F.2d 688, 692 (9th Cir.1990) ("The test of whether an employee has been discharged depends on the reasonable inferences that the employee could draw from the statements or conduct of the employer."), cert. denied, 502 U.S. 957 (1991).
 
 
 9
 Whether or not BNI participated in the PG & E decision to abolish the jobs is irrelevant. It is BNI's conduct that constituted a violation of the Act, not the actual decision by PG & E to abolish the jobs.
 
 
 10
 C. BNI's Communication of PG & E's Decision to the Strikers
 
 
 11
 BNI claims that its communication of PG & E's decision to abolish the jobs of nonreturning strikers was protected under 29 U.S.C. § 158(c). This claim lacks merit.
 
 
 12
 BNI told the striking employees that their positions would be abolished if they did not return to work by the deadline. These statements could have reasonably been understood by the striking employees to mean that BNI was threatening to abolish the chance of both present and future employment with BNI. The fact that PG & E was about to eliminate the jobs could have been communicated to the striking employees in "carefully phrased" words without at the same time creating such a threat. The failure to do so, and the chosen utilization of inherently threatening words concerning those residual job rights, amounted to coercion and therefore violated § 158(c). See NLRB v. Gissel Packing Co., 395 U.S. 575, 618 (1969).
 
 
 13
 Whether or not the employees actually felt coerced is irrelevant to this determination. The test for determining whether alleged misconduct has a reasonable tendency to coerce employees is objective. See Champ Corp., 933 F.2d at 692.
 
 
 14
 D. BNI's Application of its Probationary Policy
 
 
 15
 BNI claims that the NLRB erred in finding that BNI's application of its probationary policy violated the Act. In the alternative, BNI claims that if the application of the probationary policy did violate the Act, the violation must be considered de minimis. These claims lack merit.
 
 
 16
 First, BNI's refusal to reinstate striking employees to available positions by placing them on one year of probation and refusing to distribute their resumes for future jobs violated the Act because it constituted a failure to reinstate the striking employees to available positions. See Champ Corp., 933 F.2d at 698.
 
 
 17
 Second, BNI has failed to show that its application of the probation policy to the striking employees was due to "legitimate and substantial business justifications." See NLRB v. Washington Aluminum Co., 370 U.S. 9, 17 (1962); NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378 (1967).
 
 
 18
 The mere existence of a probationary policy that could be applied in a strike situation is not in and of itself a legitimate and substantial business justification for discriminating against strikers. See Washington Aluminum, 370 U.S. at 16 (established rule which forbade employees from leaving their work without permission did not provide justifiable cause for discharging striking employees); NLRB v. Kit Mfg. Co., 335 F.2d 166, 168 (9th Cir.1964) (rule governing failure to report for work after lunch period without punching out or telling foreman did not provide justifiable cause for discharging employee who left work to rejoin strike), cert. denied, 380 U.S. 910 (1965).
 
 
 19
 Moreover, BNI's description of the policy demonstrates that it could exercise discretion to excuse an employee's failure to complete an outage, including for "good cause." Thus, under the policy, BNI could authorize an absence for any purpose it deemed desirable and refuse to authorize it for any purpose it found undesirable. This broad discretionary authority undermines BNI's reliance on this "longstanding" policy as a legitimate business justification for denying the striking employees work opportunities they would have had absent their protected strike activity. The probationary policy would permit the employer to punish an employee for engaging in concerted activities protected by the Act because it could prohibit even the most plainly protected kinds of concerted work stoppages. See Washington Aluminum, 370 U.S. at 17.
 
 
 20
 Third, BNI's violation of the Act was not de minimis. During the period that BNI imposed the probation, it precluded the former strikers from seeking new employment opportunities at other utilities where BNI had contracts. Furthermore, BNI's rescission of the probation does not carry any assurances that BNI will not impose the probationary policy on striking employees in the future.
 
 CONCLUSION
 
 21
 The NLRB's holding that BNI violated § 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1) and (3), by telling striking employees that their jobs were abolished when they refused to return to work, by refusing to hire these employees for other outages, and by telling the employees that they were ineligible for work with BNI for a period of one year, is supported by substantial evidence in the record. Therefore, we affirm the NLRB's findings of unfair labor practices and grant enforcement of its order.
 
 
 22
 ENFORCEMENT GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3