NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0797n.06

Case Nos. 11-2184/11-2282

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Aug 28, 2013***
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ALL SEASONS CLIMATE CONTROL, INC., | ) ) ) |
| Petitioner/Cross-Respondent, | ) ) |
| *v.* | ) ) ) |
| NATIONAL LABOR RELATIONS BOARD, | ) ) |
| Respondent/Cross-Petitioner. | ) ) ) |

ON APPEAL FROM THE
NATIONAL LABOR
RELATIONS BOARD

BEFORE:  BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  All Seasons Climate Control, Inc. ("All Seasons") appeals from a decision and order of the National Labor Relations Board ("the Board"). The Board adopted the findings and conclusions of the Administrative Law Judge that All Seasons had engaged in unfair labor practices relating to the union that represented All Seasons's employees. On appeal, All Seasons argues that it did not engage in unfair labor practices, and it challenges the portion of the Board's order requiring All Seasons to bargain with the union for a minimum of fifteen hours per week and to submit written bargaining progress reports every thirty days.  For the reasons we explain below, we ENFORCE the Board's order.

**I.**

All Seasons is based in Norwalk, Ohio and installs HVAC systems in connection with the construction industry.  In 2005, after an organizing drive by Sheet Metal Workers International

Association, Local Union No. 33 of Northern Ohio, AFL-CIO ("the union"), a majority of All Seasons's employees voted in favor of union representation. Before the election, one of the employees, James Marino, had talked with All Seasons's owner, Bob Stang, and had asked Stang the company's stance regarding the union. Stang replied that "he was not going to allow the Union in his company."

The union was officially certified in January 2006, but All Seasons refused to bargain with or furnish information to the union. In response to a subsequent complaint, All Seasons contended that the certification was invalid and denied that the information requested was necessary and relevant. The Board rejected these arguments, and the Court of Appeals for the D.C. Circuit enforced the Board's decision and order. All Seasons subsequently met for various bargaining sessions with union representatives between August 2007 and August 2008. On September 17, 2008, All Seasons withdrew its recognition of the union based on a petition signed by most of All Seasons's employees.

A new complaint was issued, and a trial was conducted before an Administrative Law Judge ("the ALJ"). At trial, Marino testified that during the years following the initial union election, he had gone periodically into Stang's office and asked what All Seasons was doing about the union. According to Marino, in February 2008, Stang called him on his company cell phone while he was out on a job site. Stang told Marino that he needed Marino to do him a favor and call David Farkas, All Seasons's attorney. Marino called Farkas a few minutes later, and he testified that Farkas told him that he was a valued employee and that "they needed [him] to do something for them about circulating a Petition to call for another vote to vote the Union out." When Marino said he would

do it, Farkas started telling Marino what the petition should say. Marino testified that Farkas was talking too quickly for him to take complete notes, and that he was able merely to "scribble[] some things down." Marino further testified that Farkas told him not to have the other employees sign the petition until May or June. Finally, at the end of the conversation, Marino said that Farkas told him, "[R]emember, we didn't have this conversation, and don't call me from a cell phone again."

In July 2008, Marino drafted and circulated a petition to decertify the union. However, he was unable to decipher his notes from his February conversation with Farkas, so he drafted the language of the petition as best as he could. Marino testified that when he took this original petition to Stang, Stang told him that the wording of the petition was problematic and suggested generally what type of wording would be better. Marino asked for the petition back and said, "[W]ell, I guess I'll have to get another one then." Stang replied in the affirmative.

In August 2008, Marino circulated a second petition. Marino testified that when he took this petition to Stang and asked for the address for where to send it, Stang asked to see the petition, took it, and said he would take care of it. All Seasons subsequently withdrew recognition from the union based on this second petition and declined to bargain any further with the union or to provide the union with any further information.

In his decision, the ALJ found the testimony of Marino to be credible and concluded that All Seasons had engaged in unfair labor practices in violation of Section 8(a)(1) and (5) of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1), (5). Specifically, the ALJ concluded that All Seasons:

> (a) [s]olicited and encouraged an employee to circulate two petitions for the purpose of decertification of the Union and/or revoking the Union's majority status, and assisted him in those efforts[;]
> (b) [w]ithdrew recognition of the Union and refused to engage in further bargaining based on the second such petition[; and]
> (c) [f]ailed and refused to provide the Union with all of the information it requested that was necessary and relevant to the performance of its duties as representative of unit employees; more specifically, current employees with their contract [sic] information and their wages and fringe benefits.

The ALJ ordered All Seasons to cease and desist from these types of actions as well as to take certain affirmative actions. Among the affirmative actions the ALJ ordered was a requirement that, unless the union agreed otherwise, All Seasons must hold bargaining sessions with the union for a minimum of fifteen hours per week and submit progress reports every fifteen days.

The Board affirmed the ALJ's decision with minor modifications. As relevant here, the Board affirmed the ALJ's finding that Marino was a credible witness, but it modified the affirmative bargaining remedy slightly to require submission of progress reports every thirty days, instead of every fifteen days.

All Seasons filed in this Court a petition for review of the Board's decision, and the Board filed an application for enforcement of its order.

## II.

### A. Substantial Evidence Supports the Board's Findings.

"It is well established that we review the Board's factual determinations as well as the Board's application of law to a particular set of facts under a substantial evidence standard." *Painting Co. v. NLRB*, 298 F.3d 492, 499 (6th Cir. 2002); *see* 29 U.S.C. § 160(e), (f) (providing that the Board's factual findings shall be conclusive "if supported by substantial evidence on the record

considered as a whole"). Although this standard requires more than "a mere scintilla of evidence," we will not disturb the Board's findings if they are "supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Painting Co.*, 298 F.3d at 499 (internal quotation marks omitted). "Also, under this standard, we defer to the Board's reasonable inferences and credibility determinations, even if we would conclude differently under *de novo* review." *Id.* "The Board's choice between two equally plausible and reasonable inferences from the facts cannot be overturned on appellate review, even though a contrary decision may have been reached through de novo review of the case." *Exum v. NLRB*, 546 F.3d 719, 724 (6th Cir. 2008) (internal quotation marks omitted).

All Seasons acknowledges in its brief that the decision of the Board "rises or falls upon [the] finding that All Seasons unlawfully solicited and encouraged an employee to circulate two decertification petitions." "The law is clear that an employer may not solicit its employees to circulate or sign decertification petitions . . . ." *Armored Transp., Inc.*, 339 N.L.R.B. 374, 377 (2003). "Other than to provide general information about the [decertification] process on the employees' unsolicited inquiry, an employer has no legitimate role in that activity, either to instigate or to facilitate it." *Id.* (internal quotation marks omitted). *Compare Texaco, Inc. v. NLRB*, 722 F.2d 1226, 1236 (5th Cir. 1984) (recognizing that an employer's actions were unlawful when the employer, *inter alia*, "initiated and stimulated the activity that led to the employees' withdrawal from the Union," even though the employer had previously learned of employee dissatisfaction), *with NLRB v. Kit Mfg. Co.*, 335 F.2d 166, 168 (9th Cir. 1964) (holding that an employer's conduct was lawful where the employer merely failed to oppose "action taken by an employee entirely on his own

initiative with knowledge that company permission was withheld and taken in accordance with the wishes not of the company but of himself and certain of his fellow employees"). Here, the testimony of Marino provides substantial evidence supporting the conclusion that All Seasons unlawfully solicited Marino to circulate the decertification petitions.

Although Marino had gone periodically on his own volition to Stang's office and asked what All Seasons was doing about the union, Marino did not initiate a decertification petition until the company approached him and asked him to do so. Stang called Marino in February 2008 and said he needed Marino to do him a favor and call Farkas. When Marino called Farkas a few minutes later, Farkas told him, as Marino testified, that "they needed [him] to do something for them about circulating a Petition to call for another vote to vote the Union out." Marino responded that he would do it, and Farkas then proceeded to explain what the petition should say. Farkas also told Marino not to have the other employees sign the petition until May or June. At the end of the conversation, Marino testified, Farkas told him, "[R]emember, we didn't have this conversation, and don't call me from a cell phone again."

Thus, according to Marino's testimony, which the ALJ found credible,[1] Stang and Farkas solicited the circulation of the decertification petitions. The company requested that Marino draft and circulate a decertification petition, and Marino complied. Marino's testimony provides

---

[1] Although All Seasons challenges Marino's credibility, we note that "[i]t is not this Court's function to resolve questions of fact and credibility when there is conflict in the testimony. This Court ordinarily will not disturb credibility evaluations because the ALJ was in the superior position of observing the witness' demeanor." *V & S ProGalv, Inc. v. NLRB*, 168 F.3d 270, 276 77 (6th Cir. 1999) (citation omitted). Indeed, we will accept the Board's credibility determinations "unless they have no rational basis." *Fluor Daniel, Inc. v. NLRB*, 332 F.3d 961, 967 (6th Cir. 2003) (internal quotation marks omitted). Despite All Seasons's arguments, we see no justification in this case to disturb the ALJ's finding, affirmed by the Board, that Marino was a credible witness.

substantial evidence supporting the Board's conclusion that All Seasons unlawfully solicited Marino to circulate the decertification petitions.

Because All Seasons was unlawfully involved in the decertification process, the decertification petitions were tainted and therefore do not justify All Seasons's withdrawal of recognition from the union. *See V & S ProGalv, Inc. v. NLRB*, 168 F.3d 270, 281 (6th Cir. 1999) ("[B]ecause ProGalv interfered with its employees' rights to be represented by the Union, the petition was tainted and ProGalv therefore cannot in fact rely upon the petition as the basis of Union decertification."); *Columbia Portland Cement Co. v. NLRB*, 979 F.2d 460, 464 (6th Cir. 1992) ("[A]n employer cannot lawfully withdraw recognition from a union if it has committed as yet unremedied unfair labor practices that reasonably tended to contribute to employee disaffection from the union." (internal quotation marks omitted)). Because All Seasons unlawfully withdrew recognition of the union, it is unnecessary for us to address the remainder of All Seasons's arguments, except its challenge to the affirmative bargaining order.[2]

**B.    All Seasons Failed To Preserve an Objection to the Bargaining Requirement.**

All Seasons argues that the Board erred in ordering fifteen hours of bargaining per week and the submission of progress reports every thirty days. Despite the fact that the validity of an affirmative bargaining order with a specific minimum weekly hour requirement would apparently be an issue of first impression for this Court, we do not reach that issue, because All Seasons failed to preserve it properly before the Board.

---

[2]We do note that although All Seasons argues the Board erred in finding that All Seasons failed to bargain in good faith, the Board found it unnecessary to rule on the allegation of bad faith bargaining, stating in a footnote that the finding of such a violation "would not materially affect the remedy" in this case.

"No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). A party's failure to present an objection to the Board renders this Court without jurisdiction to consider the issue. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982).

In footnote 2 of its decision, the Board stated that All Seasons had "excepted generally to the 'ALJ's remedies,' but it did not except specifically to the judge's grant of an affirmative bargaining order to remedy [All Seasons's] unlawful withdrawal of recognition. Therefore, we find it unnecessary to provide a specific justification for that remedy."

All Seasons argues that the Board misunderstood its exception to the "ALJ's remedies," pointing to the fact that the exception specifically referred to the "ALJ's Decision, page 31, line 10 through page 32, line 12." All Seasons contends that this citation to page and line numbers was sufficiently specific to constitute an appropriate objection. The problem with this argument is that the page and line numbers referenced encompass the entire order at the end of the ALJ's decision, which included more than simply the particular remedy requiring minimum weekly bargaining hours. While it might have constituted a sufficiently specific objection had All Seasons separately referenced the precise page and line numbers containing only the requirement of minimum weekly bargaining hours, a simple, broad reference to the entire order was not sufficiently specific to preserve the particular challenge All Seasons seeks to make. *See NLRB v. Watson-Rummell Elec. Co.*, 815 F.2d 29, 31 (6th Cir. 1987) ("The specificity required for a claim to escape the ban imposed

by [29 U.S.C. § 160(e)] is that which will 'apprise the Board of an intention to bring up the question.'" (quoting *May Dep't Stores Co. v. NLRB*, 326 U.S. 376, 387 n.5 (1945))).

We do not believe there are extraordinary circumstances in this case that excuse All Seasons's failure to object specifically to the fifteen-hour-per-week bargaining requirement. *See* 29 U.S.C. § 160(e). Accordingly, we express no opinion regarding the legitimacy of that portion of the Board's order.

### III.

For the foregoing reasons, we **ENFORCE** the Board's order.